Ralph Rogeri appearing on behalf of Optional Capital, the appellant in this case. The primary issue on appeal, as we see it, is whether Congress in adopting CAFRA and modifying 28 U.S.C. section 2465 to include an attorney fee provision also included a self-destruct or transformation clause making the before a claimant can establish standing and its ownership. Well, but didn't we really have two separate proceedings here? They were combined because we said no sense going back and starting over again. But we had a forfeiture proceeding in which the government was proceeding against, and they called them the Kims. And then we had a tax lien proceeding in which people were trying to establish who owned the property. Why not separate the two? And in the first one, the Kims prevailed. The Kims prevailed and said the forfeiture is no good, the seizure was no good. And then in the second one, you prevailed. Whether you get fees in the second one, let's put aside for a second. But why can't we just separate this into two proceedings? Why isn't it the appropriate way to do it? Well, I don't disagree that there were two separate proceedings. However, the second proceeding took place in the context before the initial was completed. Well, the first proceeding, as I understand it, the Kims prevailed. There was an appeal. We said, you're right, the Kims win. And you don't have to go back and start over again to fight about this other stuff. It's all there in front of you already, Judge. You've got discretion. You've got to fight in front of you, litigate out that other stuff. Have I got that wrong? I believe you have, Your Honor. The Kims prevailed in the sense that they obtained summary judgment on behalf of all of the claimants. But they established that the seizure was no good. They established that the government or the government did not present sufficient evidence to prove. I'm using legal terms. They won. They defeated the seizure of the property in the forfeiture proceeding, correct? They defeated the government's right to forfeit it to itself. I'll take whatever terms you want to give. And the Kims were awarded an attorney fee for the forfeiture victory, correct? They were. At that point, at that point, isn't that true? They were. Okay, and then at that point, we turn to your claim against Kim. And at that point, the government moves to intervene again, correct? Well, it wasn't our claim against the Kims. It was our claim against the properties. We were saying these are our properties. These are not the Kims' properties. Okay, okay, okay, against the properties. Nonetheless, the Kims were defending. And the government moves to intervene and says, we got some tax liens, right? Yes. And at that point, you filed a motion for summary judgment to adjudicate the lien priority, correct? Correct. And at that point, the district court said you didn't have the lien priority. Correct. In fact, the district court said your lien was inferior to the government liens. Yes. And at that point, you entered into a judgment or a settlement with the Kims, and the Kims gave up their property to your client. And at that point, which is the only thing that I really have any question about here, then the government still didn't want the settlement to be appropriate. They still argued, correct? Yes, Your Honor. And at that point, Judge Smith is pointing to, don't we have a fight then about tax enforcement? Don't we have the government saying at that point our tax lien should prevail because we don't think you own the property? I think the answer is yes from your perspective, right? I think that is secondary, and we did argue that we are entitled because the government, in fact, filed their intervention and intervened into an ongoing forfeiture case. But the problem that I have, and this is the question, this is why we're getting you there, you lost on the tax lien, and whether it was superior to your lien, the only thing you got, if at all, was a secondary argument, if at all, that the government could come in and fight for something you'd already settled out. And the court said, you know, the government's out of this. They don't even have any standing. So I guess my worry is, are you the prevailing party then as it relates to the motion to intervene? Well, because you're not going to get any fees if you're not the prevailing party. And it seems to me that the motion to intervene was to establish that their lien was better than yours because you moved for summary judgment on that, and you lost. And then you had to file an extra document or two at the end to say my settlement is okay, judge. But it seems to me there aren't two different proceedings here, and the district court could very easily suggest you're not the prevailing party at all as it relates to the tax lien. Therefore, you get no fee. So how did you prevail in the second proceeding? Tell us how you prevailed. By prevailing in the initial proceeding. But you didn't prevail. In the initial proceeding, what happened was there was a seizure, and the Kims came in and defended against the seizure. And they won. No, they didn't. They did not win. They got fees. They got fees, but they didn't win. What do you mean they didn't win? They won against the government, and it went on appeal, and we sustained the appeal, and then they got fees. But we're talking 28 U.S. Code Section 2465, which existed before it was amended by CAFRA, talks about what were we trying to accomplish in this case? We had been continually prevented from attempting to accomplish what we were attempting to accomplish, which was obtain the recovery of our property. It was our property that the government had seized here. Frankly, you were, and the district court's idea is relating to whether the Kims' property ought to be forfeited or not. The district court felt like you were helping the government more than you were helping the Kims. Because of your arguments. And when I read your arguments, I thought, well, you know, it's absolutely correct. It seems to me you lost just like the government lost. Because it went on appeal, and the Kims did not get it forfeited. Everything you said helped the government in their forfeiture case. That's what the district court argued. That's what they said in their opinion. You said they're crooks. They're crooks. This ought to be forfeited because it's, well, you said it's ours, but they're crooks. Here's, I just want to take this by point, because I think you have an argument that you're not making on the attorney's view side. So let me tell you what it is. I think once the government shows up and says I don't care what deal you made with the Kims about who owns the property, that's a terrible deal and we want to upset it because we have a superior tax lien. At that point, you're right within the wheelhouse of the tax lien statute in my view. So don't you at least get fees for that? Yes. I agree with you 100%. I guess I'm having a tough time saying why you agree with that. Because the whole of it is on the USA's motion to intervene, you had two issues. One was is your lien superior? The second was is there, is it as you can arrange it to be? You lost on whether your lien was superior, and you didn't even get a chance to really do anything in response because the district court threw out the second issue because the government didn't have any standing. So I'm still having a tough time understanding why you prevailed at all. This was commenced by the government as a forfeiture action. And we had standing as a claimant. Right, but that's not the way that it proceeded. It was. But this is why we're having some difficulty here, and I want to let you answer. But what happened was the district court first proceeded to the forfeiture action and said, this is easy for me, in effect. I can stop at stage one because this wasn't an appropriate forfeiture. This wasn't an appropriate seizure. I don't have to get into who owned the property. That's a secondary question. And when it came up to us, we said, yeah, you do. Now that you've resolved the first one, go resolve the second one. So that's why, from our perspective, the forfeiture argument, at least from mine, is very hard because I don't see you prevailing in the forfeiture case. Had the district court said this was a righteous seizure but the Kims don't own the property, then I could see you prevailing. That's what we did. That's what the court, in fact, found. If we look at the judgment that was, in fact, entered in the forfeiture cases, and it's the first exhibit of volume two at page 289, it is the final judgment on the claims of Optional Capital, Inc. With respect to the forfeiture action, we ultimately prevailed because we were the owners of the properties, and the court found that. Give me the ER number again. 289, the first document in volume two, commencing at 289. And the judgment of the court is, on April 30, 2013, through May 1, 2013, the claims of claimant Optional Capital, Inc. to the properties in each of the above consolidated actions were tried. Optional Capital claimed to be the owner of each of the following. And then it says, with respect to the claims of Optional Capital, it is hereby found, adjudicated, and decreed that Optional Capital was and is the owner of each of the following defendant properties. Yeah, I know the district court said that, but didn't the district court enter a previous order that went up on appeal to us that said the forfeiture is no good because the Kims have prevailed? No. No? What did we decide the first time this case came up to us? Well, it came to you two times. There were three separate decisions by this particular court, the first one being the published decision with respect to the May 2004 property. Right. And with respect to that one, with respect to the first decision, wasn't it simply about forfeiture? With respect to that decision, the court had dismissed the government's claims to those particular properties, and this court said that that was incorrect, but that even if it had been correct, the court was nonetheless under a duty to adjudicate our competing claim to be the owner of those particular properties because that is the requirement of forfeiture law. Right. And you're citing a judgment to me, but you're citing not the court's first judgment, but rather the court's last judgment. But that was reversed. The first judgment was reversed by this court. It wasn't reversed with respect to the forfeiture claim. We said, you're absolutely right, District Judge. They didn't – the government was not entitled to forfeit, but you've got to go back and litigate this ownership issue. Right? Because we also have a – we also have a tax – No. Well, no. The government – the attorney fee order, in fact, was reversed by this court in favor of the Kims in the initial published decision. The court reversed it, said that it was not appropriate for an attorney fee award to be entered. At the same time, and on that same day, there was also a memorandum decision with respect to summary judgment properties, different properties, which had been consolidated, but additional proceedings had taken place at the district court while the May 2004 properties were before this particular court. But there were several – you're citing us the last order of the district court, are you not? That's the dispositive order with respect to the judgment with respect to optionals. Okay, so tell me where – As a party to the forfeiture. Tell me where in that order it says you prevailed in the forfeiture action. Well, that's the nature of the judgment. Because the third appeal was after the first two decisions of this court. We went back to the district court, and the district court then said, well, wait a minute. You lost because the government lost, and so you don't have any right to prove your claims to these particular properties. And we came here again, and that was the 2010 decision where this court said, and it's 406 FACTS 154, that no, the fact that the government may have lost its rights to forfeit did not implicate our right to be determined the owners of these particular properties. And to have them returned. And the court said that. The question was whether or not – that's in front of us – whether or not when the court said that it was saying the forfeiture action continues and you can litigate – you're still litigating the forfeiture action, or whether it simply said what we have left is a fight between you and the Kims about who owns the property. District court, it's in front of you. You should have resolved it. Well, there was no language whatsoever in that. In fact, the argument was from the Kims that was rejected by the court that we didn't have standing under the Forfeiture Act because properties had been seized from other people, one or more of the various Kim claimants, and the court rejected that and said that we certainly had prudential standing under the Forfeiture Act, 18 U.S.C. 952. So if I can rephrase your argument. What you're saying is that this was all one proceeding. And at the end of the proceeding, you won. And the proceeding started because of the forfeiture. And therefore, you should get fees, right? Yes. Yes. So 28 U.S.C. 2465, as it's always been, even before it was amended to include an attorney fee provision, says that upon a judgment for the claimant. This was a judgment for the claimant. Who gets the properties back? The government had seized them. The government was never going to get them once it lost. But we had to still win. And we did win. We got them. That's what this judgment is. That's how we prevailed. We prevailed. And who did you prevail against? We prevailed against the entire world. Not against me. Well, you can't claim that these properties are yours, Your Honor. Not that you ever would. But, you know, the government was claiming their properties. They can't make that claim anymore. The Kims were claiming they were their properties. They can't make that claim anymore. Nobody could make that claim. Anybody who got notice of this forfeiture proceeding had to bring their claims. And we did. We filed our claim, and it's in here. We answered the complaint, and we litigated year after year after year. We kept saying to the district court, let us prove that we are the owners of this. And we had to come here three times before we finally were permitted by the district court to do that. And then we did it. And we won. We got a judgment from the district court. I think you're well over your time. We'll still give you some time for this. Okay. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. I'm Assistant U.S. Attorney Stephen R. Welk for the government. There are a number of reasons why this was clearly two separate cases, that this devolved into two separate cases. There's no question that it started as several civil forfeiture cases. But as the district court and this court explicitly realized, at some point, and it was three years before Optional obtained its judgment, its final judgment that it's relying on here, it was three years between the time that the government was eliminated from this case and its forfeiture claims were lost and extinguished, and there was this victory on the part of Optional. Can we focus on the tax lien case for a second? Sure. So Optional and the Kims are fighting about who owns the property, and you're saying, no, well, it doesn't matter because we have a tax lien. We get to impose our lien against the property, which, as I understand it, was bigger than the value of the property? The lien was larger than the value of the property. But, Your Honor, I want to clarify, just before you go any further, that the government's argument was if the Kims are considered to be the owners. Okay. Let's go on with this because this is what interests me. So the government shows up and says, I'm not in this fight. That's fair. You guys fight because at the end, if I have a tax lien, I win, and if the Optional Capital wins, that's fine. I understand that position. Optional Capital wins. They make a deal with the Kims. And then the government shows up and says, not so fast. We said we were going to stand aside in this thing, but we don't like that result. We think it's a bad deal. We think the Kims still own the property, and we think, therefore, a tax lien should apply. Aren't all the fees that are incurred after that point incurred in defeating the government's claim to a tax lien? No. The number one reason why they're not is because while the government did file that, and I can talk about it, there's two. I think there's two reasons why the government filed it. I don't care why you filed it. You filed it. But the more important reason is the government did make an attempt to come back in and provide guidance to the district court or its opinion, but the district court struck it immediately. Okay. Fair enough. The district court struck it down. Right before the district court struck it down, didn't Optional Capital show up and say, district court, this is why you should strike it down? Here's our opposition? Didn't they incur fees in making that opposition? They might have. Surely they did. There's a document in the record where counsel sat down and wrote out, you know, why he thought you guys should not prevail in your tax lien argument at that point, and it's a limited amount of fees, but those seem to me to be squarely within the statute. The fact that the district court thought that your position wasn't warranted, whether or not it was, I put aside, doesn't really mean they didn't incur fees in opposing it. The United States government showed up and said, now that you've battled the Kims into submission, Optional Capital, not so fast. We told you before we were going to stand out of this one, but we're not going to. We're going to come back and make our claim. At that point, don't they incur fees in response to your position? Well, I guess the question I have, Your Honor, would be under what statute would they incur fees? The tax statute. A prevailing party may be awarded reasonable litigation for a suit brought by or against the United States in contermination with the collection or refund of any tax. At that point, aren't you seeking the collection of a tax against the property that these folks now own? We are not. Number one, the issue on which the government and Optional were at odds in that case was the priority issue. No, that was the first issue. You have two issues. You fought about the priority of liens. You won. Correct. Now they then go and make a settlement with the Kims. The settlement says, the Kims say, we give up all claims to the property you own at Optional Capital, and they come back to the district court and say, here's a judgment, district judge, and you say, we don't think that judgment's right. We don't think they own the property. We think the Kims own the property. And they have to respond to that. And the judge says, go away, government. I don't think you have any standing to raise this issue. I'm focusing merely on that last part of the litigation. At that point, aren't you trying to collect your taxes against the property that Optional Capital is now claiming to own? Perhaps. But this is why I went back to the motivation issue. I know the court indicated they're not interested in the motivation. I'm not talking about our sort of internal subjective reasons for doing it. I'm talking about the objective reasons for doing it. The government was trying to do a couple of things. And I suppose it's true that ultimately the government was attempting to ‑‑ if the government had succeeded in the argument that it made in that instance, it would have arguably ‑‑ it would have presumably ‑‑ See, I'm with you all the way up to that point. You said, we're just a bystander. We're standing by. We're not doing anything. But then you stop standing by. But the honest truth is, and this is where I want to make sure that we know where we're going, it seemed to me that the government moved to intervene and was altogether anxious to stand by and not do anything and see whether the Kims or Capital won. The reason that they couldn't stand by is that Optional moved for summary judgment as to lean priority. And at that point, the government had to come in and fight for its lean priority. Isn't that true? Correct. And you won on that. And it's all for the tax. And it all had to do with the tax levy. Correct. We're not talking about the ownership. We're not talking about any of the forfeiture stuff, strike ownership. We're not talking about forfeiture. All we're talking about is tax levy. Then at that point, you came in and defended, and the district court said your lean is superior, correct? Correct. And at that point, then, the Kims and Optional entered into an agreement. And then you came in and said the agreement is not any good, and they had to file a brief or whatever they had to file, and the district court said the government doesn't have any standing here. Don't even worry about it. My question, and I think Judge Hurwitz and I are on the same question. My question was it seems to me that Optional is not the prevailing party. One cannot argue they're the prevailing party. There were two issues on the tax lien. One was whether who had the priority, which Optional forced on the court. The government didn't force it on the court, and they lost. And the second was after they'd reached the agreement, you still have a tax lien to fight about because you don't own it, which the court said, baloney, the government doesn't have any standing. My biggest issue, then, is can I separate the adjudication of the lien priority from the last issue, which was the government doesn't even have any standing to raise the argument? You don't need to because the reason the government came in at the end and tried to make that argument that was rejected by the court was because the government was concerned that what the parties, what Optional and the Kims did here had the potential of doing some real harm to the interpretation of the forfeiture law. I understand your motivation was probably very good, and, in fact, maybe you had standing. Maybe the district judge made a mistake and made a mistake in rejecting it, but you're not up here appealing that. No. The question Judge Smith and I are asking is can you separate that little tail end of the proceeding from the rest of it and say, look, you put these parties to an expense in trying to enforce your tax lien that it turns out they prevailed against you on. You won on priorities. They don't get fees for that. But as to this part, you were trying to enforce a tax lien by saying they didn't own the property and they incurred some fees. Why can't we separate that part of it from the rest of the proceeding? Well, I think this goes back to something that the court discussed earlier on the first case this morning, and that is the setting there was, and there's this question in the cases that says, what if somebody tries a bunch of motions over the course of a litigation and they lose all of them, but they end up going to trial at the end and they win? Can the court or should the court reduce fee awards because they lost a bunch of times before they won? And the general rule is no, the court probably shouldn't do that. We've got the opposite here. We've got the government won every single issue on which it was adverse to optional. The government took a misstep at the end from the district court's point of view, and I'm not here to argue about that. That's what happened. The government tried to come back into the case and say, look, we don't think this is right, what's happening here. And the district court said, I don't care what you think because you're only here for the lien priority and this doesn't have anything to do with the lien priority. I don't think 7430 and the authority interpreting it stands for the proposition that because optional happened to be on the side of keeping the government out when the district court decided on its own that the government didn't belong in there in the first place, that that makes them a prevailing party within the meaning of the statute. And I think what's important to do is talk about what that means. What it means to be a prevailing party. You look at Buchanan and the cases after that, Perez Arellano versus Smith, where the courts have said, the Supreme Court and this court has said, well, we're going to determine a prevailing party status. We're going to say, was there a determination on the merits? But the most important thing is when it's the government on the other side, is the government required to do something because of this judgment that it wasn't required to do otherwise? And the answer to that question here is no, not with respect to optional. Your argument is interesting, so I want to take this stuff in a little bit different order. Let's assume what happened was you hadn't filed your tax lien and these two parties fought about who owned the property. And optional won. And then you showed up with your tax lien and optional said, well, I've got two. You showed up with your tax lien and you made two, and your argument was, I've got this tax lien and you really don't own the property, optional. I'm trying to envision how that would have worked. But really, in my own mind, what happened here was there was a litigation about priority. You won. There was a litigation about who owned the property, optional won. And then there was a very small litigation about who owned the property with you as a party in it. So didn't you lose in that one? In other words, you didn't get to enforce your lien. I don't think it's fair to say that. No, because the issue there wasn't. The government wasn't arguing that it could enforce its lien against optional's property. It argued it was still Kim's property, notwithstanding their settlement. The government argued that the parties were attempting to manipulate the system to avoid the imposition of the tax lien. Well, you actually submitted a proposed form of judgment that said, notwithstanding their settlement, the court should find that the Kims still owned the property and that, therefore, our tax lien is valid and we can take the property. Right? That was your position. That was the position. And they defeated that. Well, I don't agree that they defeated it. I don't think the district court took optional's opposition into consideration at all. I think the district court decided that it was clear that the government couldn't make that argument, didn't have standing, rejected it out of hand in a summary fashion. And so to suggest that optional prevailed just because they were there, I don't think any of the authority and I don't think the statute supports that. When a lawyer opposes a motion or anything else, doesn't he prevail whether the government, I mean, whether the judge reads his brief or doesn't, whether the judge says, well, I know all that. I don't need you to tell me that. Doesn't he still prevail because he's won the point? I don't believe he prevails when the finding is that the party who's trying to intervene doesn't have standing. It's an issue that if somebody sues you for a million dollars and you oppose it and one of your arguments is he doesn't have standing and you win that argument, you win your case. I think you have a tough time with Judge Reinhardt's question. I don't care why it is the district court does what they have to do. If they are getting the reward of what the district court has given, it doesn't seem to me that it's a fair argument to suggest that they're not prevailing on that issue. I'm worried that the issue is not on that issue, but the issue is about a tax lien, which has many issues in it. And you won the big one that they forced on the court, and they may have won this last one. But in every case, you win some and you lose some. And so, therefore, at that point, the district court has to determine who is the prevailing party, even though you win some and you lose some. And whether I can suggest that the district court is wrong, that you are the prevailing party, when it's a produce of discretion determining prevailing party at all, seems to me that's the best issue for you. Well, I agree, Your Honor. And I think this was a complicated and unique case. So I want to take a look at Judge Smith's question. We're talking to each other a little bit, but I want you to help us. We're talking to each other more than a little bit. Yeah. At the end of the day, after three years of litigation, these guys think they finally own the property, and the government walks in and says, not so fast, optional capital. We have a proposed form of judgment here, court, that tells you that we own the property. And if I were representing them at that point, I would file a brief that says, Judge, this is ridiculous. And the judge says, you're right, this is ridiculous. Why don't they at least get fees for that brief? That's my question. Because it really would have changed the relationship of the parties. Your proposed form of judgment would have put the property in the ownership of the Kims and would have let you take it with your tax lien, because everybody now agrees your lien is superior. So why isn't that little fight at the end really a victory for optional capital? If they don't win it, they go home with nothing. I think it is a victory, but it's a victory in the sense that Judge Smith has described, where they won this. It is a tiny battle in this. Well, it's the whole war, isn't it? Isn't it the whole war? If they lose it, the war is over. You won. But there are a number of situations in any case where if one side wins, it would be dispositive of the case. And I don't think that's the way any of the authorities, I don't think that's the way this court or any other court has ever looked at this question of who's a prevailing party. I think they've looked at more objective things like did the, especially when it's a fee-shifting statute involving the government, did the claimants or the defendants, the party who's seeking the award, achieve a victory on the merits that resulted in the government having to do something that it otherwise would not have been required to do? And that didn't happen here. That's not what happened here. What happened here was— How do you apply that to a tax lien statute? If you lose, what is the government doing that it wasn't always required to do? So let's assume you assert a tax lien against my property and you lose. What are you then doing that you were otherwise not required to do? Well, I think what the cases talk about, when you look at the tax lien cases, what they looked at there was where you had the government and the party that it was litigating against, where they were adverse. No, I understand, but I'm trying to use your framework. You say you only get fees when the government is told to do something it otherwise wasn't required to do. So tell me how that applies to the circumstance where the government litigates a tax lien against—just directly against—optional capital and loses. Fees apply in that circumstance, do they not? And you're not being told to do something you otherwise weren't required to do. You're being told you can't do something you wanted to do. Well, yes, that's probably true. I guess the instance would be they would be required to release the property to them. But, again, it all circles back to the issue that Judge Smith mentioned and that the government prevailed on, and that is— Weren't you required to release your tax lien against this property at the end of the proceedings? Because it didn't belong to the Kims. So, yes. But one of the things I did want to circle back on, and I understand I'm out of time, there was one last point I wanted to make that had to do with one of the questions you asked the other side. And that is I wanted to clarify that in the October 13, 2009 judgment that was affirmed by this court, the summary judgment, that the government did not appeal. The district court ordered in 2009 not only entered judgment for the Kim claimants on the forfeiture claims, but ordered the government to return all of the property to the Kims. So there was—any question about whether the Kims prevailed, it's absolutely clear that they did. Because the government was actually ordered by the district court to return all of the property back to the Kims. The only reason the government didn't do that is because this court concluded that it should be remanded for determination of the ownership issues. And at that point, the government actually asked the district court to be relieved of its obligation to maintain custody of all those assets because the forfeiture claims were gone. Optional opposed that motion successfully, and the court required the government to continue to hold on to the property. But the only reason the government had any contact with that property going forward is as the custodian for the court. Let me take one minute to ask something that nobody else I think is interested in, but I just don't think I quite get. Didn't the Optional have to see that you did not forfeit the property in order to maintain any interest in it? If you had succeeded in the forfeiture, would that not have wiped out Optional's interest in the property? If the government had succeeded in the forfeiture, Optional would have given an opportunity to present their innocent owner defense. And there's a very good chance that the government might have recognized Optional's interest in the assets had they been forfeited from the camps. So Optional's interest was the same as yours? Our theories were absolutely in line with one another, yes. Because the government's theory was that all of this property had been obtained by fraud and that Optional was one of the victims of the underlying fraud. So was your theory, we'll litigate forfeiture first and then we'll figure out who owns it second? Or was your theory, I want to take the property because we're forfeiting it? No, the theory in all of these types of cases is we will try to forfeit it against the people we took it from, who we allege to have been involved in the underlying illegal activity. And then when we're left, if all we're left with at that point are the victims that we acknowledge are victims, we generally do not fight with the victims. We try to get the property back to the victims. We never made it to that point here. That's very nice of you. I'm sorry? I said that's very nice of the government. Thank you. That is our goal. To do the work of the victims and get the property back. That is what we do in fraud cases. Thank you. Thank you. We'll give you some time for rebuttal. We gave you the other stuff, but we'll give you a few minutes. Could I ask you that question also? Do you disagree with the fact that when they tried to forfeit the property, their interest was the same as yours and you were making the same arguments? No, we were not. Their interest was not the same as ours. In their initial complaint, they had essentially pled what we ultimately proved twice, that the properties at issue had all been purchased with funds stolen from us. But the government was claiming that the properties were also purchased with funds that had been stolen from DAS Corporation. DAS Corporation was a claimant as well, claiming that they were the true owners of these particular properties because they were purchased with funds that had been stolen from them. And so we were always asserting our own claims and throughout the entirety of this litigation from the moment we filed our claim and answer opposing the government's attempt to forfeiture. So yes, we were against the government throughout the entirety of this particular action because it was our contention as we ultimately proved that all of the properties had been purchased with funds stolen from us. Do you agree that if the government succeeded in its forfeiture action, there would have been then a proceeding in which you could claim the property from the government and that issue would then be resolved? No. I believe that if the government had not lost and had presented the evidence that we ultimately, that we also presented to the district court in response to some re-judgment motions that were denied when we presented our evidence, the jury would have decided this case at trial. The government would have put on its case, Optional would have put on its case, the Kims would have put on their case, and the jury would have been instructed and the determination would have been made as to whether or not the government was entitled to the properties, Optional was entitled to properties, or any of the Kims were. Did the government take a position in the forfeiture action that you had no interest in the property? It said that, the position that it always said that both Doss and us had interest in the property. And you could go fight it out after they prevailed against the Kims, right? Our litigation position was not based on whether, and fortunately we proved up and worked up our own case because when the government was called upon by the Kims to present their evidence in support of their claims for forfeiture, they failed. And that was their failing to present evidence in support of their claims of forfeiture, which I believe they failed because they started adopting that Doss had claims when it didn't have any claims. But be that as it may, we were always litigating our own claims. You didn't help them win the forfeiture claim because they lost it, right? We did not help them win the forfeiture claim and we weren't trying to help them win the forfeiture claim. We were only trying to win the forfeiture claim for ourselves. That was our sole goal here. But what Judge Smith asked before was the question, let me rephrase it. What you were saying was, you're darn right government, these guys are crooks and they should forfeit any interest they have in the property. It happens to belong to us and we think we own the property. Isn't that, wasn't that your position? It was one caveat. They didn't have any interest in these properties. We did. They were all purchased with money that they had stolen from us. They didn't have an interest in them. They did not, at the end of the day, have standing. They may have had on the surface standing, but ultimately a jury was going to have to make that determination. And the government could have litigated this case any way it chose to. It could have attempted to force a litigation between the competing claimants as to standing. But again, you know, Optional was representing Optional. It filed answers to the complaint challenging the government's right to forfeiture. And ultimately Optional was given, you know, three separate times by this court the right to proceed. And ultimately that's what we proceeded on and ultimately prevailed upon, that we were in fact the owners of these particular properties. And so when we prevailed in 2010. When you prevailed, the government was gone. Well, the government. Isn't that true? I don't need your explanation. When you finally prevailed, the government was out of the case. They had been thrown out and the appeal had said, you're out, government. Yes, I would agree with that. But within the meaning of the statute and as for a prevailing party, for us under the statute under CAFRA, that does not in any way. I understand that argument. I understand that argument. I just wanted your answer to that question. Thank you. I would like to say one other thing talking about. One question. Did you oppose the government's forfeiture request? Yes. We filed our own independent claims and they're set forth in the record saying that. But did you, I know you said you were the owners of the property. But did you ask the court not to grant the government's forfeiture claim? Yes, by those claims and our answer. We said the government is not entitled to forfeiture. We are the owners and the property should be ordered returned to us. Is that the ground on which the government prevailed in the forfeiture action? The government never prevailed in the forfeiture action. No, I meant lost. I'm sorry. Is that the ground on which the government lost? The government lost because it was not able to establish by sufficient evidence that it could trace these properties to any crime or that there was any money lost. Therefore, your claim to ownership of the properties didn't have anything to do with why the government lost in the forfeiture action, correct? You'd have to say yes based on the appeal and the fact that we just kept sending it back for you to have a chance at your action. You'd have to say yes to that and be done. I was lost in my own mind. I understand your argument. I rephrased it before, which is that really you guys showed up in this because there was a forfeiture action. At the end of the day, you won, and so we ought to treat the whole thing as a forfeiture action. I understand that argument, but really in terms of defeating the forfeiture, the forfeiture got defeated without the benefit of your arguments, right? In this particular case, yes, because we were perfectly content to go to trial and let the government attempt to put on its case then and establish our case through the government's witnesses so that in front of a jury and get the judgment that way. We were perfectly content to do that. It didn't work out that way, but at the end of the day, we still accomplished the same result. I know I've got you on your feet for much longer than you planned, but let me ask you this question. Let's assume that the action proceeded along the way your opponent says, which is that the government prevailed against the Kims, and then you said, okay, now it's time for us to show that we own the property. The government got summary judgment or something else, and the government stood aside and said, we don't care about who owns the property at this point. We just wanted to take it away from the Kims. You wouldn't be entitled to fees under that circumstance, would you? Well, I think we would, because at the end of the day, the government has seized our property, and the only way that we can recover that property is by successfully prevailing in this forfeiture action, which is what we did. I understand your answer. On one other point. We'll give you a minute. Sorry. Justice Smith, you had mentioned that we. No justice, just judge. Judge, sorry. No justice in the Ninth Circuit.  You know, I'm never right on that. Go ahead. You know, after the decision of this court in 2010, which said that we were not bound by the government's failure to prove its forfeiture claims and we came back, the court had said that we forced this particular litigation from the government. We didn't force anything. The government. You moved for summary judgment. Well, only after the government said, wait a minute, we now have a lien in all of these particular properties, and we are intervening in this particular case. Our lien. Yes, our lien to have this. So it was the government who, by asserting now that it had a lien in property that had been stolen or purchased with stolen funds, that kind of forced. But even then, they didn't say we want to deal with this lien right up front. The only reason we're in this case is if the Kims win, we want our lien to be there. And you moved for summary judgment, saying our lien is superior to the government's lien anyway, so why should the government even be around? And you lost. We did lose that. And had we. We did lose that? Yes, we did lose that, Your Honor. But the government, as it argued in that, if that would have been the only issue, then there was no way for us to ultimately prevail. And we prevailed here because we were the owners of the particular property, not because we had a lien that was prior in time. So had we actually prevailed in that particular motion, then the. Then there's no question the government would have to pay. No, the government would not have to pay because we would have been prevailing as a lien holder, not as the owners of the property. Because you can't prevail as a creditor. Yes, you can't prevail as a particular creditor. So ultimately, by doing what they did, they required us to establish our ownership of these particular properties, something that they had done from the beginning by seizing the properties and attempting to forfeit them to themselves. And I would ask that the court keep that in mind, that we litigated in this case for a long time, 10 years, 12 years, attempting to recover from the government because they had seized them and claimed the right to forfeit them, that they were ours. And so I would ask that the court not rewrite this particular statute by ipsit-dixit, which is all that they have been arguing here because the statute in and of itself talks about a judgment for claim. And ultimately, that's what we finally were able to obtain. And I thank you all for the time. Thank you, counsel. The case is adjourned and will be submitted. The court will take a brief recess.
judges: Reinhardt, Smith, Hurwitz